The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning, counsel. This is case number 4-23-0812, People v. Matthew Scott. First, may we have appearances of counsel. First for the appellant. Joshua Scanlon for the appellant, your honor. And for the appellee? Hunter Guttin for the appellee, your honor. Okay, thank you. Mr. Scanlon, you may proceed with your argument. Thank you, your honor. May it please the court, counsel. My name is Joshua Scanlon with the Office of the State Appellate Defender, and I'm here today representing Matthew Scott in his appeal, requesting that this court either reverse his convictions, remand for new trial, or remand for new sentencing hearing. Given the number of issues in this case and our limited time, I would like to focus my argument today on Issue 2 involving the instructional error, and if there is time, briefly, Issue 6, the One Act, One Crime violation. As the other issues, I would largely rely on the arguments in the briefs. Perhaps the most glaringly problematic error in this case is the failure of, unfortunately, every attorney involved in the case to recognize that the jury was being misinstructed on the core elements of the two offenses for which Mr. Scott was on trial here. The state has conceded that the challenged instructions were given an error, and it also does not contest that counsel's failure to object to those errors was deficient for purposes of ineffective assistance. So the main issue here is the prejudice of the uncontestedly erroneous instructions in this case. Very briefly, counsel's non-objection here did not invite these errors. The court in People v. Cohn rejected application of the Invited Error Doctrine in essentially the same context that we face here, where defense counsel failed to object to improper instructions that were tendered by the state. As our Supreme Court made clear in People v. Harvey, the distinction between forfeiture and invited error is between the failure to object, which causes forfeiture, and some affirmative agreement to the erroneous course of action, which can invite error. To accept the state's construction of invited error here and find passive non-objection to invite the error would ultimately be to obviate the plain error rule entirely. This court should consider this as plain error. First and foremost, it should consider this as second-prong plain error. As this court recognized in the Hobbs case, improper instructions on core elements of an offense undermine fundamental fairness and threaten the integrity of a trial. Under the circumstances of this case, where the jury was unequivocally not instructed on the nature of the acts required for conviction, it would severely threaten the integrity of the judicial process to allow Mr. Scott's convictions to stand. However, Your Honors, even if this is not second-prong plain error, it is still reviewable under the first prong of plain error or under ineffective assistance of counsel because the evidence in this case was closely balanced. An assessment of closely balanced evidence requires, excuse me, a common-sense assessment of the totality of the evidence within the context of the case, and particularly the evidence on the elements of the charge of offense, together with evidence about the witness's credibility. Where there is a credibility contest between different versions of events, the evidence is closely balanced, but this is not the only way in which evidence can be close. The key for prejudice based on closely balanced evidence is that the evidence on a contested element was such that the error involved a serious risk of tipping the jury's decision against the defendant. Regardless of any credibility determination here, the evidence is close where a contested element could be resolved differently given the error at issue. This court's decision in James is the perfect example of this kind of close evidence and is directly applicable in this case. There, the alleged victim testified to being touched in what she classified as her private part, which she stated was below her waist and in between her legs. This court found the evidence to be close on the specifics of what occurred. And while the statement of the touching suggested a possible improper touching, it was a touching that could have amounted to contact, intrusion, or an improper touching that fit under an entirely different offense. This is the same situation that we face in this case, where even if an improper touching could be inferred from the evidence, whether the charged offenses occurred depended very specifically on the nature of what that touching was. Without the appropriate instructions on intrusion and contact, the scales were tipped against Scott on the nature of what that touching was and whether it amounted to the crimes that he was charged with. This court should follow its previous decisions in Hobbs and James and find that the instructions here amounted to plain error. Furthermore, in terms of closely balanced evidence, there was a credibility contest at issue where the state presented Scott's statement to Reed, admitting that he had provided care to H.W., had been her sitter for a time, but denying that any touching occurred, which stood in direct opposition to H.W.'s statements that he had touched her. The instructional errors here tipped the scales in that contest of credibility, where they informed the jury that any form of touching, any form of the most simplest form of contact, would be sufficient for conviction, which obviated the need for the jury to examine H.W.'s credibility and inconsistencies about the nature of any touching that was involved, because under the instructions that they were given, it simply did not matter. Mr. Scanlon, may I interrupt you for a moment? And you referred to this as a credibility contest, and you pointed out the statement that defendant made to Detective Reed and that that provided the point as compared to the counterpoint and established the credibility contest. But at the same time, you argue that it was error to have admitted the out-of-court statement in which defendant had denied ever touching the victim. So, which is it you're wanting to use that out-of-court statement to establish defendant's denial of having touched the victim, but at the same time, you're arguing that it was error for that out-of-court statement to have been introduced? Yes, Your Honor. I will take sort of a two-part answer, I think, to that, which is, first, with regard to the instructional errors, as well as the State's later, what I believe was our issue four, the State's accusation and closing arguments, whether or not the statement was admitted is sort of either way the statement was admitted for purposes of this trial. So, that credibility contest is significant to both the instructional error and to that later error. And it doesn't, our claim that it was improper to admit that doesn't negate the existence of closely balanced evidence as it occurred at trial as applicable to those two errors. Well, in your argument in regards to it being error for the statement to have been admitted, it indicated that there is no useful purpose served by that, but you are arguing a useful purpose, it would seem, in saying that it established defendant's denial. Therefore, there was this credibility contest. Doesn't this argument in regards to the credibility contest point to the value to defendant of having had that out-of-court statement admitted? No doubt, Your Honor. Certainly, had it been just the denial, had it not been sort of the additional information provided by Reid and his sort of impressions of Mr. Scott, and I would say the additional statements regarding his possible penalties, I think the denial by itself had perhaps a useful purpose. But taken in whole, our argument under Issue 3 is that it ultimately was more prejudicial than it was probative or more prejudicial than it was useful. And most specifically, I will point out to the fact of the further defense evidence of Scott's mother's testimony, which discussed how she observed him providing care to H.W. when she was there with him, which also denied ever seeing him touching her in an inappropriate way, which stands again in contrast to H.W.'s conclusions, perhaps not as clearly. I'm sorry, Your Honor. I'm sorry, please continue. Okay, perhaps not as directly as a direct denial from Scott, but still provided a what would be a contest between this is what his mother observed him doing and this is what she believes he was doing at that time versus what H.W.'s statements were of what he was doing. I believe there is still a credibility contest at issue there. And even if not a credibility contest directly between Scott and H.W., at least a credibility assessment that is significant to closely balanced evidence for purpose of that error and all of the errors where H.W. provided multiple statements. And those statements bore inconsistencies. And again, specifically with regard to the nature of the touching, which was sort of the core conflict that was at issue, and particularly for the instructional errors purposes, the thing that the jury did not need to resolve because it was instructed that any simple touching would do. At the end of the day, there is sufficient contest there between what is the nature of the touching that was actually involved, if there was a touching involved for the errors, particularly the instructional errors, to tip the scales against Scott in this case. Further, with regard to ineffective assistance on the instructional error, as I stated, the state has not contested deficiency in failing to object to that error. And prejudice is based on that same assessment of can be based on that same assessment of closely balanced evidence where there is at least a reasonable probability that the jury may have acquitted Scott on either of the charged offenses if they were not improperly instructed. That a simple touching directly or through clothing would have been sufficient for the offenses. Because the jury was misinstructed on this at a fundamental level on the core elements that were contested in the case, and furthermore, in a way that could tip the scales against Scott, this court should find either plain error or ineffective assistance of counsel and remand this case for a new trial on that basis. As to the count to instruction. Isn't all of the elements of that offense contained in the instruction that was given the, the only. I guess, non conforming portion was the stuff in parentheses. Is that correct the sexual conduct language. So, your honor the not quite the definitional instruction of sexual conduct was incorrect. So the definitional instruction gave the definition of sexual conduct and it gave the directly or through clothing language, which was not applicable to the contact appropriate for that charge. And then the other instructions, I believe, is the issues instruction, parenthesize sexual conduct in order to differentiate that from the other charge of for penetration. And that second parenthetical of sexual conduct linked those instructions directly to that definitional instruction, which was incorrect and inform the jury that they could make this determination on that 2nd form of. Excuse me, predatory criminal sexual assault based on contact based on instead of contact this conduct under which it could be directly or through clothing, which as described in the curry cases, incorrect and inappropriate for the charge of contact as it was as it was charged as it was brought. And because it misinstructed the jury on that, it opened up the. Realm of what kind of touching would be would fall within what could be convicted beyond that, which which was required, which was contact directly skin to skin contact the evidence in this case was skin to skin. Contact right there's no allegations that are being made about through clothing. I disagree with that your honor particular, particularly in regards to the very inconsistent testimony about what may or may not have occurred in the living room or in the kitchen because those involved him. Manipulating her shorts or her pants in some way, whether or not he pulled them down, or whether or not he pulled her underwear down and in particularly in our testimony at trial. She said the only thing he touched were her shorts and that could potentially be something that could be construed as contact through clothing. And that way that instruction misled the jury to believe that this was a way in which they might find that any of these circumstances met the definition for either of the offenses. In that way, tip the scales against Scott and suggested that they could do this without without ultimately resolving all of the inconsistencies regarding what actually happened. What was the actual nature of any touching involved? Now, even if this court disagrees and does not remand for a new trial, this court should at least vacate one of Mr Scott's two convictions where the state violated the one act one crime rule. As in Crespo, the state here made no attempt at all to apportion the two charges to distinct instances of conduct and instead treated them ultimately as alternate theories for the same offense. The state's argument in closing is really the best evidence of this where the state said the jury had to consider whether Scott committed penetration or sexual conduct. The state ultimately presented this as an either or theory without identifying particular instances of conduct that apply to one of the charges or the other charge. The fact that they did not argue any one particular instance met one charge over the other, but rather treated the allegations as a whole and suggested that Scott was guilty of either offense because he engaged in this simple touching generally demonstrates, excuse me, the way in which the state failed to apportion the two charges. As in Strawbridge, the counts here covered an overlapping period of time, indeed the same time period. They were different and it is impossible to determine from the charges, from the evidence, or from the state's argument, which count is applicable to which specific instance or what the jury based may have based its determination on. The jury here could conclude, as the state argued, that one instance met the criteria for either of the differing charges. Without an apportionment of the instances of conduct by the state, there is simply no way to determine on what basis or what specific instances the jury found guilt. This is squarely the issue that arose in Strawbridge and it demonstrates the need for this court to vacate one of Scott's two convictions if it does not remand for a new trial. Mr. Scanlon, may I ask a question here? If we agreed that count one would need to be, the conviction of count one needed to be reversed because of the faulty instruction and remanded for a new trial on that, would we have to address the argument that you're making right now about the one act, one crime? No, Your Honor. If this court remands for a new trial, then no, the one act, one crime argument would not be applicable. Thank you. All right. If there are no further questions, I would simply ask that this court remand for a new trial or vacate the convictions. All right. Thank you. You'll have time in rebuttal. Mr. Gettin, your argument? May it please the court, counsel, my name is Connor Gettin and I represent the state in this matter. In this case, defendant alleges that the state did not prove intrusion. I would submit that there was ample evidence of intrusion. The victim in this case said both at trial and during her Child Activity Center interview that the defendant's finger went inside of her private area. She specified further that her private area is where she pees out of. Short of saying the word vagina, it is unclear how exactly this child victim could have been more specific in indicating that her private spot was her vagina. The victim said also that defendant moved his finger inside of her vagina and that the contact occurred multiple times. Based on this, I believe that there is ample evidence of intrusion in this case. Regarding the sexual conduct aspect of the proof element, it can be inferred from the circumstances in this case. And based on what the victim described, she described, again, multiple touchings. After she got out of the shower, she described that, again, the defendant's finger went inside of her private part. She mentioned that when she would get out of the shower, the towel would be on the toilet. So this was not, as defendant indicated, an instance of potentially her being dried off. I think we have, based on the circumstances, very clear evidence of also sexual conduct for the purposes of the sufficiency evidence of that count as well. If I may move into the jury instruction issues, first, I would, again, say that the acquiescence to the jury instructions constituted invited error. And even if it did not, I do not think that the playing error prongs were met in this case. Talking about the close balance of the evidence, as Mr. Scanlon pointed out, we have to conduct a common-sense assessment, first of all, about both the evidence and the credibility of the parties. And in this case, we have the child victim who, again, on multiple occasions, indicated that defendant touched her inappropriately. She did it both in her child advocacy interview two years after the alleged offense and then again at trial. But we also have other things supporting her credibility in this case. We have her mother, who noticed changes in her behavior. She would not take showers afterwards. After the defendant had babysat her, she changed her mood. She expressed displeasure with him babysitting her, which is ultimately why he stopped babysitting her. Additionally, I believe the mother's neighbor or friend testified that the victim spoke to a group of adults about the abuse in this case. And the mother also recalled that conversation taking place and that the victim pointed to her private parts when talking about the touching. By contrast, the defendant's version of events came in through the police interview, as we discussed previously. And in that version, he changed his story. He also was nervous and finicky during the interview. And when asked what should happen to people who touch children inappropriately, he said that they should be first told not to do it again. And then if they thought about it or if it occurred a second time, that they should be given counseling or therapy. In addition, defendant's mother said that she primarily watched the children. And then the investigating officer in the case was recalled and rebutted that testimony and said that she had previously said that she did not watch them very much at all. So I think when we take all these things together, when we do an assessment of the evidence, the evidence in this case was not closely balanced. Let me ask you a question about the erroneous instructions relative to sexual conduct versus sexual contact and count two of the charges. Mr. Scanlon indicated that there was testimony that could have been interpreted by the jury relating to what happened in the living room. That that could have been over the clothing touching by defendant and that that then the erroneous instruction regarding sexual conduct then could have come into play and resulted in a conviction on count two. And therefore, defendant may have suffered prejudice as a result of that. What's your response to that? I would say that the testimony about that in the living room was merely that her pants were zipped and unzipped. It does not indicate any actual touching of the area. He was just helping her with her clothes, according to that version. According to her Child Advocacy Center version of events, she said, I believe that the touching that occurred in the living room was the same as the one that occurred in the bathroom where, again, the finger went inside of her vagina. And then also, I believe she indicated that he in the living room in her Child Advocacy Center interview pulled down both her pants and underwear, which would again indicate skin to skin contact. So, although it is unfortunate that we have these erroneous instructions on both counts, as I've already conceded in my brief, I don't believe that the second instruction particularly had the risk of prejudice in this case. Thank you. And then, counsel, I have one other question. Excuse me, Justice Vancell, are you okay with me? Go ahead. Okay. One other question with respect to the jury instructions and your contention that perhaps the defense invited error here. It really wasn't the defense who or which submitted these offending instructions. It was the state. Isn't that correct? That's correct, Your Honor. And that makes a difference. And again, we only have defense counsel here failing to object, not certainly affirming or indicating affirmance in any way. So, it's pretty hard to get to invited error under those circumstances, isn't it? I understand. The only thing I would say to that, perhaps I misapprehended the invited error doctrine, and I apologize. The only thing I would say in terms of acquiescing to the instructions is that—and granted, this is past the point when the instructions were accepted, so I acknowledge that—is that the defense counsel also used those instructions in her argument and in that way affirmed them. I recognize that that is beyond when they were agreed to, but yes. Right. Okay. I think, obviously, you made the distinction because once the court determines and makes a ruling with respect to the instructions, then that's what counsel has to use to argue to the jury. I understand. Okay. Thank you. Sorry. Regarding the interview in question, if I may move to the interview, I suppose—may I move to the interview, or would you like me to address other issues? You may proceed. Okay. So regarding the interview, first of all, I would say that, as we discussed previously, it was a matter of trial strategy to admit this interview. Without this interview, defendant would never have—none of his denials of the offenses would have come in, and so, in my opinion, the denial of the crime itself is more valuable than any sort of damaging things that also came in through the interview itself. Without the denial of the interview, then there is no credibility contest. There cannot be a credibility contest when we only hear from one side of the contest, of the dispute. So the interview needed to come in in order for it to be—in order for defendant to have a chance of prevailing in this case. Otherwise, we would just have the victim's word against nothing. And so with that in mind, it could not be ineffective assistance to counsel because it is a valid trial strategy for the interview to come in. Further, I would also say that even if, for whatever reason, this court rejects the trial strategy portion, then there is also an exception that the recording was not feasible in this case. The officer testified that the recording system was down. He did not realize the recording system was down in the police station until after the interview was concluded, and so that is why the recording wasn't made. And so I think based on those two things, we have enough to settle that issue. Regarding the other contingents under that issue, I would just stand on my brief. Regarding the One Act, One Crime issue, I'm sorry I'm jumping around, Your Honors. I just want to make sure I get to everything. It is true that the state did not apportion between the two acts. However, I believe the Foster case, which I cited in my brief, distinguishes the cases that defendant relies on, Crispo and Strawbridge. In that case, the victim was touched multiple times in Foster. The Foster court found that because the defendant was on notice based on the closing argument that they tried to treat the instances as multiple instances, that it was not a One Act, One Crime violation. It also occurred multiple times over a period like we have here. So based on those, based on that case, I would submit that the One Act, One Crime doctrine does not apply and that if this court does not remand the case further, that both convictions could stand. If there are not any other questions, I would otherwise just rest upon my brief, unless there is other things the court would like me to address with my time. Just briefly, Mr. Gettin, the defendant cites Hobbs, which is a decision of this court, and I don't believe that I see in your brief that you distinguish Hobbs in any way. Would you agree Hobbs is applicable law to this case? Yes, Your Honor. I apologize. Okay, thank you, Mr. Gettin. Sorry. Did you have anything to add? No, Your Honor. Thank you, Your Honor. Okay, thank you. Mr. Scanlon, rebuttal argument? Yes, Your Honor. I'd like to address basically three things that counsel addressed. First, with regards to the closeness of the evidence and specifically his argument that H.W.'s accusations were corroborated. The only thing that the other state's witnesses, specifically Elaine W. and Ms. Mayer, I believe, corroborated was that H.W. made an accusation of touching. They did not in any way corroborate the actual nature of the acts involved, the specifics of the touching, and Elaine W.'s testimony specifically was that she still didn't know at the time of trial what had actually occurred. The only thing she knew was that H.W. had told her that she had been touched generally. Beyond that, there was no specifics corroborated. So the corroborating evidence does not provide additional weight to H.W.'s accusations, particularly where they were inconsistent, because they don't specify or provide evidence of what the nature of those acts was, which is the core problem with regard to the instructional errors specifically. Second, with regard to H.W.'s differing accounts regarding the living room events, counsel presents those as an either-or, as the jury has to either believe that there was nothing at all, and so this instance in the living room doesn't have any bearing on the case, or they have to believe her CAC testimony. The jury ultimately was required with resolving that conflicting testimony with what she said in her CAC interview about there being multiple events that occurred in the living room involving pulling down both her pants or her shorts and her underwear, or her testimony at trial that there was one instance in the living room where he just pulled her shorts up and down or unzipped them and re-zipped them one time. The jury was required to resolve those in assessing whether or not any of those acts ultimately fit the nature of either of the charged charges, and in doing so, there was closely balanced evidence on the nature of those offenses because the jury would have to resolve whether or not any touching occurred based on these two conflicting accounts. Finally, with regard to the one-act, one-crime violation, counsel has just said that the state did not apportion the charges between specific instances of conduct relying on Foster. Foster is specifically distinguishable here because the charges in Foster, I believe two charges that were in Foster, were identical. There was no difference. They were not based on different versions of an offense. They were the same. So the only way the jury could find guilt on both of those is if they found that they happened more than once. That is not the case here. Here, there are two different versions of the offense that were charged in two separate charges, and the jury was not given any apportionment of those two charges between specific instances from which to know that they were required to find one instance that met charge one and one instance that met charge two. Without that apportionment, this court cannot now, on review, find specific instances. That is specifically what was stated in CRESPO, that we can't, on appeal, determine that where the state hasn't specified particular instances for particular charges, that they amount to separate offenses. That being the case, this court should vacate one of the convictions if it does not remand for a new trial. However, we argue that this court should remand for a new trial or remand for a new sentencing hearing. If there are no further questions, I would simply ask this court to rule in our favor. Okay. Thank you, Mr. Scanlon. Thank you both. The case will be taken under advisement and a written decision will be issued. The court stands in recess.